IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| MONICA JONES, <br><br> Plaintiff, <br><br> v. <br><br> WAL-MART STORES EAST, LP; and JOHN DOES (1-5), <br><br> Defendants. | CIVIL ACTION NO.: 4:19-cv-114 |

**O R D E R**

This matter is before the Court on Defendant Wal-Mart Stores East, LP's Motion for Summary Judgment. (Doc. 26.) Plaintiff Monica Jones initially filed this action in the State Court of Chatham County after she slipped in a substance on the floor while she was shopping at a Wal-Mart store in Chatham County, Georgia.[1] (Doc. 1-2, pp. 4–9.) Wal-Mart removed the case to this Court, (doc. 1), and, following the close of discovery, filed its Motion for Summary Judgment,

---

[1] Plaintiff alleges that certain "John Doe Defendants" were negligent for, *inter alia*, "causing and/or permitting a dangerous and hazardous foreign substance to be on the floor of the Store," "failing to block off the area where Plaintiff fell," and "failing to display warnings of the dangers of the area." (Doc. 1-2, pp. 7–9.) "As a general matter, fictitious-party pleading is not permitted in federal court." Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010). There is "a limited exception to this rule when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'" Id. (quoting Dean v. Barber, 951 F.2d 1210, 1215 n.6 (11th Cir. 1992)). Here, the Complaint states that John Doe Defendants are "unknown entities and/or individuals that are liable for acts and/or omissions set forth in this Complaint," that "their addresses are unknown at this time," and that "[s]ervice will be effectuated . . . once their identity and addresses are known." (Doc. 1-2, p. 4.) Discovery has closed and the real defendant or defendants apparently still "cannot be readily identified for service," so the presence of the fictitiously named John Doe Defendants are "insufficient to sustain a cause of action." Williams v. DeKalb Cnty. Jail, 638 F. App'x 976, 977 (11th Cir. 2016) (per curiam). Because they are not proper parties to this action, the Court disregards the John Doe Defendants and the claim against them and will not address them again. See Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1318 n.4 (11th Cir. 2015).

(doc. 26). For the reasons explained more fully below, the Court **GRANTS** Defendant's Motion for Summary Judgment. (Id.)

## BACKGROUND

### I. The Incident

On May 29, 2018, Plaintiff Monica Jones (hereinafter, "Jones") went to a Wal-Mart store in Chatham County, Georgia, to purchase supplies for her son to tie dye a t-shirt. (Doc. 26-2, pp. 46–48.) Jones, who was pushing a shopping cart, collected the tie dye supplies as well as some groceries and then proceeded toward the check-out aisles at the front of the store. (Id. at p. 48.) As she approached one check-out aisle, but before turning to proceed down that aisle, Jones felt her foot "kind of slip[] in something," and she "braced [herself], pulling [herself] up by the buggy, by the handle." (Id. at pp. 49, 51.) She did not see the substance on the floor before or as she stepped into it and she says she did not look down to inspect it after she slipped. (Id. at pp. 51–55.) Instead, she proceeded toward the cash register to notify a cashier that something was on the floor and had caused her to slip. (Id. at p. 52.) Jones then observed Wal-Mart employees using paper towels to clean up the substance, which they told her was water and which she described as forming a "trail." (Id. at pp. 52–53.) Ms. Jones says she was not told, and was not independently aware of, how long the substance had been on the floor or where it came from. (Id. at p. 53.)

Chavon Smith was on duty as a Customer Service Manager at the store at the time that Plaintiff slipped. (Doc. 26-3, p. 2.) According to Smith's affidavit, cashier Lacora Smalls notified her that a customer said she had slipped on water on the floor near Smalls' register. (Id. at p. 3.) Smith reported to the area and observed a "small trail of water on the floor." (Id. at p. 4.) When

she and Smalls "followed the trail of water," it led them to another customer in the area who had a jug of water in her cart that was leaking.[2] (Id.) The customer's leaking water jug was placed into multiple plastic bags "to ensure that no more water could leak onto the floor." (Id.) Smith explicitly states that "[t]here was a trail of water leading from the area where Plaintiff slipped directly to the customer who had the leaking water jug in her cart" and that she "saw no other possible source of the water that was on the floor where Plaintiff slipped." (Id.)

In her affidavit, Smith references several still images from Wal-Mart's surveillance footage of the time surrounding the incident to identify both Jones and the customer with the leaking water jug that Smith discovered at the end of the water trail.[3] (Id. at pp. 4, 6–7.) Additionally, when Jones was deposed, she identified herself in the video (consistently with Smith's identification of her) and she testified that the footage shows her slipping at or around the time mark of 5:20:18 PM. (Doc. 26-2, p. 85–86.) The Court has viewed the surveillance footage and used the identifying information provided by Smith and Jones to observe these individuals as they move through the area before, during and after the time that Jones slipped. (See doc. 26-4; doc. 28-5.) The footage shows that, at 5:18:25 PM, the customer identified by Smith as having the leaking water jug pushed her shopping cart through the area where Jones slipped. (Id.) The footage also shows that, at 5:18:29 PM, after traversing the at-issue area, this customer proceeded down the

---

[2] In her affidavit, Smith states that Jones "pointed [her and Smalls] to" the customer with the leaking water jug, (doc. 26-3, p. 4), but Plaintiff denies this assertion, (doc. 28-10, p. 5), which is consistent with her denial, during her deposition, that she had any knowledge of the source of the water, (doc. 26-2, p. 53).

[3] Jones does not dispute that the individual in the footage whom Smith specifies as being Jones is indeed her. The parties also do not disagree on the specific area, particularly as depicted in the surveillance footage, where Jones was walking when she slipped.

same check-out aisle that Jones would later proceed down (at 5:20:21 PM), immediately after she slipped (at 5:20:18 PM).  (Id.)  Notably, the surveillance video, from 5:21:57 to 5:22:23 PM, also shows a Wal-Mart employee using their foot to drag a paper towel from the spot where Jones slipped all the way down into the checkout aisle through which the customer (whom Smith says had the leaking water jug) had pushed her cart shortly before Jones fell. Thus, it appears the trail of water corresponded with the path that had been taken by the customer whom Smith identified as having a leaking water jug.

According to her own testimony, Jones paid for her items and left the store, but she started experiencing pain as she loaded her purchases into her vehicle, so she went back into the store and spoke with and gave a written statement to Greg Glisson, the store's asset protection manager. (Doc. 26-2, pp. 61–64; doc. 28-3, pp. 32–33.)  Glisson also obtained written statements from Smith, Smalls, and another employee about what they observed after Jones reported that she had slipped.  (Doc. 28-3, pp. 55–56; doc. 28-4, pp. 1, 30–33.)  Glisson was charged with taking photos of the scene, gathering relevant surveillance footage, creating still images of any potentially noteworthy pieces of footage, and producing any other relevant or explanatory information to send to Wal-Mart's claims management representatives.  (Doc. 28-3, pp. 15–16, 38–41, 46.)  During his deposition, Glisson did not indicate that he had independent knowledge regarding, or that he had personally observed, the water on the floor or the source of the water; his evidence collection process was guided by the statements and descriptions provided by Jones, Smith, Smalls and the third employee.  (See generally doc. 28-3, doc. 28-4; see also doc. 28-4, pp. 10–11.)

4

II.     **Wal-Mart's Inspection Procedures**

Wal-Mart provided testimony from Smith (via her affidavit) regarding its procedures for inspecting the store for any hazardous conditions.  In her affidavit, Smith states that she was trained by Wal-Mart to "maintain a continuous lookout for spills on the floor, items which have been dropped or spilled on the floor, and other hazards" and that she has been trained "to remove, correct, or address these situations immediately."  (Doc. 26-3, pp. 2–3.)  Part of her training at Wal-Mart "included instructions to keep [her] area clean while [she] was working and to 'zone' [her] area regularly," which means "looking around and inspecting [her] work area, and walking through the area to be sure there are no spills or other hazards."  (Id. at p. 3.)  She was also trained to conduct "safety sweeps" of her area throughout her shift, meaning she would walk around her department and check the floor to make sure it was clean and safe.  (Id.)  She explains that it was her "routine practice" while she was on duty to "actively look for spills or other hazards on the floor and to remove them immediately."  (Id.)  Lastly, she states that, "[o]n the day [Jones] fell, [she] followed the routine" described in her affidavit.  (Id.)  Smith did not testify, however, that the area where Jones slipped was part of her department or that she traversed the area where Jones slipped at any time prior to the moment Jones reported that she had slipped.  (See generally id.)  Indeed, Wal-Mart has not provided any evidence that the area where Jones slipped was (or even would or should have been) inspected by any employee at any specific time prior to the moment that Jones slipped.

**LEGAL STANDARD**

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law.'" FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge its burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove her case at trial. See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty., 630 F.3d 1346,

1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)).  However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Id. (citation and emphasis omitted).  Additionally, the Court is not permitted to make credibility determinations, weigh conflicting evidence to resolve disputed facts, or assess the quality of the evidence.  Reese v. Herbert, 527 F.3d 1253, 1271 (11th Cir. 2008).

## DISCUSSION

The sole cause of action asserted by Jones against Wal-Mart is for negligence.  (Doc. 1-2, pp. 6–7.)  To prevail on a cause of action for negligence under Georgia law, a plaintiff must establish the essential elements of duty, breach of duty, proximate causation, and damages.  Black v. Ga. S. & Fla. Ry. Co., 415 S.E.2d 705, 707 (Ga. Ct. App. 1992).  Under Georgia law, the owner or occupier of real property owes a duty to its invitees to exercise ordinary care in keeping its premises safe.  O.C.G.A. § 51-3-1.  "This includes inspecting the premises to discover possible dangerous conditions of which the owner/occupier does not have actual knowledge, and taking reasonable precautions to protect invitees from dangers foreseeable from the arrangement or use of the premises."  Robinson v. Kroger Co., 493 S.E.2d 403, 408–09 (Ga. 1997) (citations omitted).

Nonetheless, in Georgia, "proof of a fall"—or of a slip that causes an individual to lose their footing—"without more, does not give rise to liability on the part of a proprietor."  All Am. Quality Foods v. Smith, 797 S.E.2d 259, 261 (Ga. Ct. App. 2017).  "To support a premises liability

7

claim, a plaintiff must show that the proprietor had superior knowledge—either actual or constructive—of the hazard that caused the plaintiff's injury." Hartman v. Clark, 801 S.E.2d 66, 67 (Ga. Ct. App. 2017) (citing Smith, 797 S.E.2d at 261). "The true basis for an owner's liability is [its] superior knowledge of the existence of a condition that could subject [its] invitees to an unreasonable risk of injury." Garrett v. Hanes, 616 S.E.2d 202, 204 (Ga. Ct. App. 2005). Thus, if the owner had no actual or constructive knowledge of the hazard, the owner is entitled to summary judgment. Drew v. Istar Fin., Inc., 661 S.E.2d 686, 689 (Ga. Ct. App. 2008).

Here, Jones does not contend or point to evidence that Wal-Mart had actual knowledge of the presence of the water on which she slipped. Accordingly, this case turns on whether she has provided sufficient evidence that could lead a finder of fact reasonably to conclude that Wal-Mart had constructive knowledge of the water on the floor. A plaintiff may demonstrate a proprietor's constructive knowledge of a hazard by showing that "(1) a store employee was in the immediate area of the hazard and could have easily seen the substance or (2) the foreign substance remained long enough that ordinary diligence by the store employees should have discovered it." Johnson v. All Am. Quality Foods, Inc., 798 S.E.2d 274, 277 (Ga. Ct. App. 2017) (citation omitted).

Jones does not argue or point to evidence that a Wal-Mart employee was in the immediate area and could have seen the water before she slipped. Instead, relying exclusively on the second method of proving constructive knowledge, she contends that there is sufficient evidence that Wal-Mart had constructive knowledge because Wal-Mart has failed to establish that it had "a reasonable inspection procedure in place that it carried out at the time of [the] incident." (Doc. 28, p. 7.) Specifically, she argues that the inspection procedure described by Smith—maintaining a

"continuous" lookout for spills and walking through one's work area with unspecified frequency to check the floors for hazards—was insufficient, and that, regardless, Wal-Mart has failed to show "by 'plain, palpable and undisputed' evidence that the inspection was actually carried out at the time in question." (Id. at 8 (quoting Burnett v. Ingles Mkts., Inc., 514 S.E.2d 65, 67 (Ga Ct. App. 1999)).)  She claims that, because Wal-Mart has not shown it had a reasonable inspection procedure in place, much less that it carried out that procedure at the time in question, she is not required to show how long the water had been on the floor before she slipped on it. (Id. at p. 9.)

In All American Quality Foods v. Smith, the Georgia Court of Appeals rejected a slip-and-fall plaintiff's argument that a defendant's failure to establish that it had a reasonable inspection policy in place relieved her of any duty to show how long the at-issue substance had been in place prior to her fall. 797 S.E.2d at 262. In that case, surveillance footage showed that, at approximately 4:28 p.m., two children carrying drink cans were walking in the aisle where plaintiff later fell when they bumped into each other and one of them appeared to glance at the floor. Id. at 261. At 4:35:06 p.m., the surveillance footage showed the plaintiff enter the same aisle and slip and fall. Id. In response to the plaintiff's argument that summary judgment was not appropriate due to the defendant's failure to establish that it had a reasonable inspection policy, the Georgia Court of Appeals explained that it

> fail[ed] to see how the inspection policy [was] relevant to [the plaintiff's] claim because in this somewhat unusual case, the video evidence establishes how long the substance was on the floor before [the plaintiff] fell. . . . [The plaintiff] fell six to seven minutes [after the spill occurred].
>
> In order for a proprietor to be liable, the hazardous condition must have been in place on the premises for a sufficient period of time such that [he or she] should have discovered and removed the hazard. We find that under the circumstances, the limited period of time that the substance was on the floor is insufficient as a

9

>matter of law to hold that [the defendant] should have discovered and removed the liquid prior to [the plaintiff's] fall.

Id. at 262 (quotations and citations omitted).

Later, in Hartman v. Clark, 801 S.E.2d 66 (Ga. Ct. App. 2017), the Georgia Court of Appeals reiterated and applied this same holding. In that case, the plaintiff had slipped on some water as she exited a restroom stall. Id. at 67. During her deposition, she had testified that there was no water on the floor when she entered the restroom and walked into the stall, and that she had stayed in the stall for five to ten minutes before exiting and slipping. Id. She argued that summary judgment was not appropriate because there were "factual questions about [the defendant's] inspection procedures and whether they were followed" on the day she fell. Id. In response, the Georgia Court of Appeals explained that, "[f]or a proprietor to be liable . . . 'the hazardous condition must have been in place on the premises for a sufficient period of time such that [he] should have discovered and removed the hazard.'" Id. (quoting Smith, 797 S.E.2d at 262). The court then emphasized that, "the undisputed evidence shows that, at most, the water on which [the plaintiff] slipped remained on the floor for ten minutes." Id. at 67. Quoting Smith, the court held that, "[r]egardless of when restaurant employees last inspected the restroom, this limited period of time was 'insufficient as a matter of law to hold that [the defendant] should have discovered and removed the liquid prior to [the plaintiff's] fall.'" Id. at 67–68 (citing Smith, 797 S.E.2d at 262, and summarizing its holding the following way: "inspection-related evidence [was] irrelevant where evidence showed that hazardous substance was on grocery store floor for only six or seven minutes").

10

Here, although she contends that she is not required to show how long the water had been on the floor before she slipped in it, Jones included argument on this point in her Response, in an abundance of caution. Despite Wal-Mart's direct evidence that the water leaked out of a nearby customer's water jug less than two minutes prior to the time she slipped, Jones argues that the water was on the floor for at least 59 minutes and 6 seconds before she slipped. (Doc. 28, pp. 9–15.) To support her theory, she points to a still image that was produced to her by Wal-Mart during discovery that shows a woman wearing a hat, standing at a cash register while four jugs of water sit on the adjacent conveyor belt. (Id. at p. 10.) There is no indication what time (or even what date) this image is from or which of the numerous check-out aisles the woman was standing at. It is also far from obvious that the water jugs on the conveyor belt are being purchased by the woman in the hat, as opposed to someone in line behind her. In an effort to link the woman to the four water jugs and also to her theory, Jones points out that the surveillance footage shows a similar-looking woman pushing a cart through the general area where Jones fell about 59 minutes and 6 seconds before Jones slipped. (Id. at p. 13.) She claims that the footage shows that the woman's cart contained the four jugs of water, but the quality of the footage and the distance of the woman from the camera do not enable the Court to confirm this. (See id.) Additionally, the woman does not appear—from the surveillance footage—to ever actually push her shopping cart over the specific area where Jones claims she slipped, and she clearly does not push her cart into the checkout aisle where the Wal-Mart employee went as she wiped up the trail of water with a paper towel. (See doc. 26-4, 4:21:11–4:25:25 and 5:21:57–5:22:23.) Nonetheless, even assuming that Jones is correct that this woman passed through the area almost one hour before Jones slipped and

11

had water jugs in her cart, Jones, critically, has not supplied any evidence or indication that the jugs of water (or anything else in the woman's cart) was actually leaking water onto the floor.

The Court finds that Plaintiff's theory is based on nothing more than speculation and thus does not contravene Smith's sworn testimony that the trail of water led directly to an actively leaking water jug sitting in a cart being used by a completely different woman.[4] See Smith v. Wal-Mart Stores E., LP, No. 2:19-cv-00138-SCJ, 2021 WL 1305393, at *5 (N.D. Ga. Mar. 8, 2021) ("Plaintiff speculates that Walmart's employees were merely walking through and not inspecting anything. Plaintiff does not present direct evidence of this theory but instead arrives at it through her interpretation of Walmart's evidence. The Court finds that Plaintiff's theory does not contravene the sworn testimony and documentary evidence showing that Walmart's employees walked through and inspected the incident area."); Parker v. Wal-Mart Stores E., LP, No. 1:16-CV-1479-ODE, 2018 WL 9437354, at *4 (N.D. Ga. Aug. 23, 2018) (finding that plaintiff's speculation based on circumstantial evidence did not create a genuine issue of fact when the evidence contradicted the "testimony of multiple witnesses"), aff'd, 769 F. App'x 875 (11th Cir. 2019); see also Lovins v. Kroger Co., 512 S.E.2d 2, 4 (Ga. Ct. App. 1999) (stating that a party's speculation does not create an issue of fact as against otherwise solid and uncontradicted evidence). The surveillance footage confirms that the woman identified by Smith as having the leaking water jug passed over the spot where Jones slipped only one minute and fifty-four seconds before Jones

---

[4] The Court has reviewed the witness statements given by the employees to Glisson shortly after the incident. (See doc. 28-4, pp. 30-33.) It bears noting that the statements are consistent with Smith's sworn testimony that the water was observed to have been leaking from a container in the cart of a customer who was nearby at the time Jones reported slipping. (Id.) The statements do not provide support for Jones's theory that the water leaked from the cart of the woman wearing a hat when she passed through the general area almost one hour earlier.

slipped.[5]  Additionally, Jones has not pointed out—and the Court has not observed—any portion of the footage that shows that this customer identified by Smith had passed through the same spot at some time earlier than one minute and fifty-four seconds before Jones fell (such that the water could have been on the floor for longer).

Accordingly, the undisputed and direct evidence establishes that the at-issue water spilled onto the floor less than two minutes before Jones slipped.  This is a considerably shorter time period than in Smith (where the plaintiff slipped six to seven minutes after the spill occurred) and Hartman (where the plaintiff slipped five to ten minutes after the spill occurred).  Thus, just as the Georgia Court of Appeals held in Smith and Hartman, the Court holds here that, "[r]egardless of when [Wal-Mart] employees last inspected [the area where Jones fell], this limited period of time was 'insufficient as a matter of law to hold that [Wal-Mart] should have discovered and removed the liquid prior to [Jones'] fall.'"  Hartman, 801 S.E.2d at 67–68 (quoting Smith, 797 S.E.2d at 262).

In light of all the foregoing, the record contains no evidence that Wal-Mart had superior knowledge of the hazard on which Jones slipped.  Accordingly, Wal-Mart is entitled to summary judgment as to the claim of negligence against it, which is the sole cause of action Jones asserted in this case.

---

[5] There is no indication that the woman wearing a hat was still in the store when the Wal-Mart employees were cleaning up the trail of water.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendant Wal-Mart Stores East, LP's Motion for Summary Judgment. (Doc. 26.) The Court **DIRECTS** the Clerk of Court to enter judgment in favor of Defendant and to **CLOSE** this case.

**SO ORDERED**, this 20th day of September, 2021.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA